UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHARLES BOWEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-04069-SLD-JEH |
| | ) |
| CITY OF BETTENDORF and WHKS & CO., INC., | ) |
| | ) |
| Defendants. | ) |
| | |
| CITY OF BETTENDORF, | ) |
| | ) |
| Cross-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WHKS & CO., INC., | ) |
| | ) |
| Cross-Defendant. | ) |

ORDER

Before the Court are Defendant/Cross-Defendant WHKS & Co., Inc.'s ("WHKS") Motion to Dismiss the Complaint, ECF No. 10; Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 14; and Motion for Leave to File Reply in Support of Motion to Dismiss the Complaint, ECF No. 21. For the reasons that follow, the motion for leave to reply is GRANTED, and the motions to dismiss are DENIED.

1

# BACKGROUND[1]

On May 22, 2022, Plaintiff Charles Bowen was walking on the pedestrian walkway along the Interstate 74 ("I-74") bridge between Moline, Illinois and Bettendorf, Iowa with two friends. A motor vehicle entered onto the pedestrian walkway from Bettendorf and struck them. Plaintiff sustained severe injuries from the incident.

Prior to May 22, 2022, Defendant City of Bettendorf ("the City") and WHKS "participated in and/or controlled the planning, design, construction, inspection, approvals, opening, and/or maintenance of the aforesaid pedestrian walkway." Compl. ¶¶ 12, 14, ECF No. 1. "[N]umerous existing national standards, criteria, and design theories for pedestrian walkways required the installation of bollards and traffic safety control systems at the entrances to pedestrian walkways." *Id.* ¶ 16. Yet there was "no barrier of any kind and/or traffic safety control system" installed at the Bettendorf entrance to the I-74 walkway—which was wide enough for a vehicle to travel on—either to prevent motor vehicles from entering the walkway or to warn motor vehicle operators that the walkway was for pedestrian use only. *Id.* ¶ 18.

Plaintiff asserts four claims: first, that the City was negligent and breached its duty to Plaintiff, causing Plaintiff to suffer severe injuries, *id.* ¶¶ 19–24; second, that the City acted willfully and wantonly or in a grossly negligent manner, causing Plaintiff to suffer severe injuries, *id.* ¶¶ 25–32; third, that WHKS was negligent and breached its duty to Plaintiff, causing him to suffer severe injuries, *id.* ¶¶ 33–38; and fourth, that WHKS acted willfully and wantonly or in a grossly negligent manner, causing Plaintiff to suffer severe injuries, *id.* ¶¶ 39–46.

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the Complaint, ECF No. 1.

The City filed a contribution claim against WHKS, claiming that if it is found liable to Plaintiff, it "should be entitled to contribution from [WHKS] in an amount commensurate with its relative degree of culpability in causing the injuries or damages complained of by Plaintiff." Answer, Affirmative Defenses & Countercl. 11–12, ECF No. 6. Though styled as a counterclaim, *id.* at 11, this is a crossclaim as it is a claim by one defendant against another defendant. *See* Fed. R. Civ. P. 13(g).

WHKS moves to dismiss Plaintiff's claims against it and the City's crossclaim, arguing that the Court lacks personal jurisdiction over it. Mot. Dismiss Compl. 1; Mot. Dismiss Countercl. 1. Plaintiff and the City contend the Court does have personal jurisdiction over WHKS. *See generally* Pl.'s Resp., ECF No. 12; City's Resp., ECF No. 17. WHKS moves for leave to file a reply to address exhibits attached to Plaintiff's response. Mem. Supp. Mot. Leave Reply 1–2, ECF No. 22. Plaintiff does not oppose the motion. *See* Civil LR 7.1(B)(2) ("If no response is timely filed, the presiding judge will presume there is no opposition to the motion and may rule without further notice to the parties.").

## DISCUSSION

### I. Motion for Leave to File a Reply

For all motions other than summary judgment, "[n]o reply to the response is permitted without leave of Court." Civil LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, Case No.

4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).

Here, Plaintiff provided exhibits to support his contention that the Court has jurisdiction over WHKS. To allow WHKS to address these exhibits, and in the interest of completeness, the Court GRANTS the motion for leave to file a reply. The Clerk is directed to file the reply, ECF No. 21-1, on the docket.

## II. Personal Jurisdiction

### a. Legal Standard

A defendant may move to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. While "[a] complaint need not include facts alleging personal jurisdiction," once a motion to dismiss has been filed, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quotation marks omitted). When the district court rules on such a motion "based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Id.* (quotation marks omitted). "[T]he party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). Illinois law provides that courts may exercise personal jurisdiction up to the limits of the federal Constitution. *See* 735 ILCS 5/2-209(c) ("A court may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United

States."); *see Kipp*, 783 F.3d at 697 (citing to this provision to support that "[t]he governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment"); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (indicating that "while . . . these two standards hypothetically might diverge in some cases," in practice, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction"). The Due Process Clause of the federal Constitution "authorizes personal jurisdiction over out-of-state defendants when the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kipp*, 783 F.3d at 697 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general and specific. *Id*. "General jurisdiction is all-purpose; it exists only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id*. at 697–98 (alteration in original) (quotation marks omitted). Specific jurisdiction, meanwhile, is "case-specific; the claim must be linked to the activities or contacts with the forum." *Id*. at 698. "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," and the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis omitted) (quotation marks omitted). "In analyzing whether the defendant's contacts are sufficient to establish specific jurisdiction, [courts] do not employ a mechanical or quantitative test." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quotation marks omitted). Courts find that specific personal jurisdiction exists "if the defendant has purposefully directed his activities at residents

of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted).

### b. Analysis

Neither Plaintiff nor the City contends that the Court has general jurisdiction over WHKS, so the question before the Court is whether it can exercise specific jurisdiction over WHKS with respect to this case. WHKS argues that it cannot because "[t]he Complaint's allegations show that [Plaintiff's] claims arise from and relate to [WHKS's] contacts with Iowa—not Illinois," and the only connection to Illinois alleged in the complaint is the unrelated driver's negligence in hitting Plaintiff and his friends in Illinois. *See* Mem. Supp. Mot. Dismiss Compl. 3, 5–6, ECF No. 10-1. WHKS further argues that because the City's "contribution claim . . . depends on [Plaintiff's] jurisdictional allegations," the Court lacks specific jurisdiction over it with respect to the City's claim as well. *See* Mem. Supp. Mot. Dismiss Countercl. 1, 3, ECF No. 14-1. Plaintiff and the City both contend that WHKS is subject to the Court's jurisdiction because it knowingly participated in the design and construction of a bridge and walkway that spanned Iowa and Illinois and thus "purposefully avail[ed] itself to and invok[ed] the benefits of Illinois." Pl.'s Resp. 1–2; City's Resp. 1.[2]

For three primary reasons, the Court finds that Plaintiff—and, accordingly, the City—has met his burden to demonstrate that the Court can exercise specific personal jurisdiction over WHKS. First, and most importantly, the crux of Plaintiff's claim is that WHKS was negligent or acted willfully and wantonly in the design and construction of an interstate pedestrian walkway

---

[2] No party cites to any cases with analogous facts; instead, the parties primarily rely on general principles of personal jurisdiction. *See, e.g.*, Mem. Supp. Mot. Dismiss Compl. 2–5; Pl.'s Resp. 2–4, 6; City's Resp. 2–4, 6–7. Such principles are sufficient to resolve the instant motions.

between Iowa and Illinois. *See* Compl. ¶¶ 14, 33–46. The pedestrian walkway was part of a larger project of building a new I-74 bridge between Moline, Illinois and Bettendorf, Iowa. *See* WHKS's Agreement with Alfred Benesch & Co. 3, Pl.'s Resp. Ex. D, ECF No. 12-5. WHKS's contract with prime consultant Alfred Benesch & Company describes the project's parameters as "reconstruction of a 7.8 mile corridor of I-74 in Scott County, Iowa and Rock Island County, Illinois," including replacement of the existing I-74 bridge over the Mississippi River and improvement of pedestrian connections. *Id.* The I-74 bridge reconstruction was conducted pursuant to an agreement between Iowa and Illinois. *See generally* Iowa/Illinois Border River Bridge Agreement, Pl.'s Resp. Ex. A, ECF No. 12-2. While the contract with Alfred Benesch & Company shows that WHKS's particular role was to design and construct in Iowa, *see, e.g.*, WHKS's Agreement with Alfred Benesch & Co. 3 (noting that WHKS's tasks were for the "Iowa Side"), the contract demonstrates that WHKS knew it was participating in a larger, interstate project. WHKS cannot plausibly contend it did not understand that it was designing and building part of a bridge and pedestrian walkway that would necessarily connect with Illinois. *Cf.* Pl.'s Resp. 3 ("WHKS knew that its bridge design and construction activities for an interstate bridge—the subject of this litigation—would (literally) be connected to, and direct traffic at, the State of Illinois and its residents.").

Relatedly, WHKS agreed to participate in this interstate construction project and derived a benefit from its participation—it was compensated for its work. *See* WHKS's Agreement with Alfred Benesch & Co. 7 (indicating that WHKS would receive its costs plus a fixed fee for its work under the agreement). It would "be unfair to allow [WHKS] to escape having to account in other States for consequences that ar[o]se proximately from" its activities in constructing part of an interstate bridge. *Burger King*, 471 U.S. at 474. "[T]he Due Process Clause may not readily

be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.*

Lastly, for over six years, WHKS attended meetings about the project run by the Illinois Department of Transportation and the Iowa Department of Transportation. *See generally* Project Management Team Meeting Attendance Rosters, Pl.'s Resp. Ex. E, ECF No. 12-6 (spanning 2010 to 2016); *see also* WHKS's Agreement with Alfred Benesch & Co. 3 (indicating that the project included "managing/coordinating activities with other Consultants along with the Iowa and Illinois Departments of Transportation for the entire corridor from the final design through construction"). While WHKS argues these meetings do not support jurisdiction because the meetings occurred at the Iowa Department of Transportation, *see* Reply 5, the Court disagrees. The attendance rosters indicate that the location of the meeting was a conference room in Iowa and video conference from multiple locations. *See, e.g.*, Apr. 13, 2011 Attendance Roster, ECF No. 12-6 at 1–2. The rosters do not indicate who attended in person versus via video conference, *e.g.*, *id.*, but, regardless, the importance of these meetings is that they were conducted, at least in part, by the Illinois Department of Transportation. The rosters show that WHKS attended many meetings with an Illinois state agency and Illinois government officials about the project. Even if conducted by video, such meetings are akin to telephone calls and constitute contacts with Illinois. *Cf. Felland v. Clifton*, 682 F.3d 665, 676 & n.3 (7th Cir. 2012) (counting letters, phone calls, and emails as part of the defendant's contacts with the forum state).

The Court concludes that it does not offend notions of fair play and substantial justice to exercise personal jurisdiction over WHKS. WHKS participated in designing and constructing an interstate bridge spanning Iowa and Illinois. It coordinated and met with Illinois government officials regarding the project. The bridge and walkway are, literally, connected to Illinois and

direct people and traffic to Illinois. It should have been obvious to WHKS that its actions, even if physically limited to the Iowa portions of the bridge and walkway, could have caused injury in Illinois such that WHKS should have "reasonably anticipate[d] being haled into court" in Illinois for such injuries. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## CONCLUSION

Accordingly, Defendant/Cross-Defendant WHKS & Co., Inc.'s Motion to Dismiss the Complaint, ECF No. 10, and Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 14, are DENIED. The Motion for Leave to File Reply in Support of Motion to Dismiss the Complaint, ECF No. 21, is GRANTED. The Clerk is directed to file the reply, ECF No. 21-1, on the docket.

Entered this 8th day of January, 2024.

                                                                            s/ Sara Darrow
                                                        SARA DARROW
                                 CHIEF UNITED STATES DISTRICT JUDGE